# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MELISSA JO COOK,             )
                                      )

      Plaintiff,             )
                                        )

      vs.                   )        **Case No. 4:08CV1487MLM**
                                        )

MICHAEL J. ASTRUE,       )
                                      )

      Defendant.        )

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Melissa Jo Cook ("Plaintiff") for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et. seq., and for supplemental security income benefits ("SSI") under Title XVI, 42 U.S.C. § § 1381 et seq. Plaintiff filed a brief in support of the Complaint. Doc. 14. Defendant filed a brief in support of the Answer. Doc. 16. Plaintiff filed a Reply. Doc. 18. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 6.

## I.
## PROCEDURAL HISTORY

On January 6, 2006, Plaintiff filed applications for benefits, alleging a disability onset date of November 1, 2003. Tr. 30. Plaintiff's applications were denied. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 6, 2006. By decision dated February 2, 2007, the ALJ found that Plaintiff was not disabled. Tr. 30-37, 330-35. The Appeals Council remanded the matter to the ALJ. Tr. 69-71. Upon remand, the ALJ conducted supplemental

hearings.[1] Tr. 338-43, 346-68. On February 14, 2008, the ALJ issued a supplemental decision in which she found that Plaintiff was not disabled. Tr. 11-23. On July 30, 2008, the Appeals Council denied Plaintiff's request for review. Tr. 3-5. As such, the supplemental decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404,

---

[1]     Plaintiff testified at the initial hearing before the ALJ and did not testify at the supplemental hearing.

Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d

65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations

omitted). <u>See also</u> <u>Eichelberger</u>, 390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell v. Apfel</u>, 147 F.3d 659, 661 (8th Cir. 1998)); <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dept. of Health, Educ. & Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;

> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

> (3) any precipitating or aggravating factors;

> (4) the dosage, effectiveness, and side effects of any medication; and

> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleges that she is disabled based on "anxiety-panic attacks." Plaintiff contends that the ALJ's decision is not supported by substantial evidence for the following reasons: (1) the ALJ erred in finding that Plaintiff had past relevant work as a housekeeper; (2) the ALJ erred because she did not include a narrative discussion of the rational for her RFC assessment and because there is no medical evidence to support the ALJ's RFC assessment; (3) the ALJ's decision contains factual errors; (4) the ALJ gave insufficient weight to the opinion of Dr. Little, Plaintiff's treating physician; (5) the ALJ erred by relying on the VE's DOT-based responses; and (6) the ALJ erred by failing to follow 20 C.F.R. § 416.930 in regard to Plaintiff's failure to follow prescribed treatment.

## A. Plaintiff's Medial Records and RFC:

In her February 14, 2008 decision, the ALJ found that Plaintiff has the RFC to perform the full range of work at all exertional levels and that:

> [Plaintiff] can understand, remember and carry out at least simple instructions for non-detailed tasks; respond appropriately to supervision, co-workers and usual work situations so long as contact with co-workers is avoided and she has only occasional contact with supervisors; make work-related judgments, commensurate with her tasks; and respond appropriately to changes in routine work settings.

Tr. 16.

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records,

observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a"'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir.2005) (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC."

Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). Pursuant to this requirement, the ALJ in the matter under consideration found that Plaintiff's subjective complaints were not credible and further found that her functional limitations included lifting no more than 10 pounds and avoiding prolonged standing and walking. Additionally, the ALJ found that Plaintiff is

restricted environmentally in regard to avoidance of sudden exposure to bright light. Only after defining Plaintiff's limitations and restrictions did the ALJ conclude that Plaintiff's restrictions do not preclude her from engaging in the full range of work at all exertional levels.

Prior to determining Plaintiff's RFC, the ALJ considered Plaintiff's medical records. In particular, the ALJ considered that on March 3, 2003, while in the Army, Plaintiff was diagnosed with an anxiety disorder by Michael G. Cammack, Ph.D., and that Dr. Cammack reported that Plaintiff's "impairment was easily treatable, but the course of treatment and time necessary to adjust medications was not 'amenable' to treatment in a military training environment." Tr. 14. The court further notes that Dr. Cammack reported that Plaintiff was referred by her Commander for a mental health evaluation for anxiety symptoms and that Plaintiff told Dr. Cammack that she had severe anxiety symptoms the past several weeks and a history of chronic symptoms of anxiety prior to entering the army. Dr. Cammack concluded that it was likely that Plaintiff had "chronic anxiety disorder," which had become worse over the last several weeks; that it was likely that Plaintiff's anxiety disorder would grow worse and impair her ability to perform her duties; that Plaintiff's treatment would be long term and was not amenable to a brief therapy offered by the military; and that it was in the best interest of the military that Plaintiff be separated from the Army. Tr. 267-68. Also, the court notes that Plaintiff's medical records, while she was in the Army, reflect that she was diagnosed with panic attack syndrome on February 19, 2003, and that on this date she was referred for a mental health appointment. Tr. 266. On March 17, 2003, Plaintiff reported having a panic attack. Also, on that date medical records reflect Plaintiff had been taking Paxil for "anxiety/panic attacks" since February 19, 2003; that Plaintiff reported that Paxil usually calmed her down; that on that date the Paxil did not calm her down; that Plaintiff denied having depression; that Plaintiff was very anxious; and that Plaintiff was feeling "much better after Ativan."

The ALJ also considered the report of L. Lynn Mades, Ph.D., who evaluated Plaintiff on April 21, 2006, and that Dr. Mades diagnosed Plaintiff with "anxiety disorder not otherwise specified"; that Dr. Mades concluded that Plaintiff's complaints of periodic panic attacks were "consistent with her diagnosis"; and that Dr. Mades concluded that Plaintiff had mild to moderate mood disturbance. Tr. 14. The court further notes that Dr. Mades's report states that Plaintiff said that, since leaving the military, she had panic attacks "about once or twice per month, lasting 15 minutes to 2 hours"; that her primary care physician put her on medication; that she saw a psychiatrist while in the military; that she had no in-patient treatments; that her last use of alcohol was "around 6 months ago"; that while in the Army she got "intoxicated every weekend over a period of about 2 months"; that she was currently taking Fluoxetine and Xanax; that she had a GED; that she admitted "to stealing a lot in school"; that she had been employed as a photographer, a housekeeper and as a temporary factory worker; that her longest period of employment lasted two months; that, in regard to her appearance, Plaintiff was well-groomed, her hygiene was within normal limits, she was alert and made good eye contact, and her motor activity was anxious and agitated; that, in regard to her ability to relate, Plaintiff was spontaneous, coherent, relevant, and logical; that, in regard to her stream of speech and mental activity, Plaintiff had no problems in receptive or expressive language ability; that Plaintiff's mood was anxious and her "affect was slightly restricted to full and generally appropriate"; that, in regard to Plaintiff's thought process, there were no preoccupations, thought disturbances, or perceptual distortions, her reality testing appeared adequate, her flow of thought was logical and sequential, suicidal and homicidal ideations were denied, and "overall, there was no evidence of thought disturbance"; that Plaintiff was oriented in all spheres; that Plaintiff currently was taking care of the household chores, was able to drive limited amounts, and was spending her time taking care of her son, cleaning, and watching television; that Plaintiff was able to take care of her personal

needs; that during the exam Plaintiff showed the ability to maintain adequate attention and concentration, with appropriate persistence and pace; that Plaintiff's prognosis was fair to good with appropriate intervention; that it was not clear if "the discreet episodes of intense anxiety described fully meet criteria for panic disorder"; that Plaintiff had "no real psychiatric treatment, though she would likely benefit from behavioral counseling and psychiatric intervention"; that there was no evidence of thought disturbance; that there was evidence of mild to moderate mood disturbance by history and presentation; that, at Axis I, Plaintiff had Anxiety Disorder NOS; and that, at Axis V, Plaintiff had a GAF of 65. Tr. 251-53.

The ALJ considered that Plaintiff saw Joseph Monolo, a licensed psychologist, for a consultive examination on November 22, 2004 and that Mr. Monolo reported that Plaintiff told him that she had spent over a year and a half in the military; that she had "hyper-vigilance, bad dreams, and trouble trusting people; that she began having panic attacks while in the Army; that she previously had these attacks "but they were not a problem"; that she had obtained a driver's license in November 2004; and that upon obtaining her driver's license, Plaintiff "was able to go to the local office, take and pass the written test and take and pass a driving test." The ALJ further considered that Mr. Monolo diagnosed Plaintiff with post-traumatic stress disorder with panic attacks and major depression; that he found she had a GAF of 50 [2]; and that Mr. Monolo thought Plaintiff's functioning would improve if she received counseling and psychiatric treatment. Tr. 18-19. The court notes that

---

[2]      Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

Mr. Monolo also reported that Plaintiff told him that in the army she received training as a helicopter mechanic; that she was released from the Army due to her panic attacks; that her panic attacks occurred once every two days; and that her last depressive episode was at the end of September 2004 "when she was not taking medication." Mr. Monolo conducted a mental status evaluation of Plaintiff and reported that Plaintiff was "adequately groomed" and "appropriately dressed"; that she evidenced no overt anxiety; that she was attentive; that Plaintiff's speech was clear and her commentary was coherent; that Plaintiff was "visibly distressed by some topics and cried several times during her visit"; that Plaintiff was reality oriented; that Plaintiff "indicated that she hears 'weird noises'"; that Plaintiff reported two occasions of suicidal ideation without attempts several years earlier; that Plaintiff displayed intact immediate memory and concentration; that she evidence intact basic judgment and reasoning; that Plaintiff was able to understand, remember, and follow simple instructions; and that Plaintiff "would have difficulty maintaining as well as managing work-related stress and pressure given her depression and anxiety." Mr. Monolo concluded that Plaintiff "who is taking medication, but is not under a doctor's care, is in need of psychiatric consultation and counseling, and with such, may improve her mood and functioning." Tr. 220-22.

The ALJ considered the that Plaintiff first saw Dr. Little, who was Plaintiff's treating physician, on February 15, 2006; that Dr. Little reported on that date that Plaintiff told him that she previously took low doses of Prozac and Paxil; that she was not taking medication and was noticing more anxiety; and that Dr. Little did not recommend a psychiatrist or psychologist. The ALJ also considered that Plaintiff saw Dr. Little on April 6, 2006; that she next saw Dr. Little on August 23, 2006, on which date Plaintiff reported increased anxiety because she was not taking prescribed medications other than Xanax; that on August 26, 2006, in a Mental Medical Source Statement, Dr. Little reported that Plaintiff had marked or extreme functional limitations in most areas of functioning

and that she had four periods of decompensation in the past year; that Plaintiff next saw Dr. Little on November 6, 2006, when she reported that she had obtained financing to use Lexapro; that in December 14, 2006, Plaintiff reported to Dr. Little she had decreased anxiety with Lexapro, that she had an increase in appetite, that she had not filled her prescription for Ativan, and that she had anxiety when leaving home; and that on January 16, 2007, Dr. Little reported that Plaintiff said that she had a headache "but was able to buy Prozac again" and that Plaintiff's headache was caused by a combination of a sinus infection and Plaintiff's anxiety. Tr. 17-18. The court notes that Dr. Little reported in a letter, dated December 19, 2006, that Plaintiff said that she "finally found a combination of medcine[s] that allow[] her to function at home as long as there is minimal stimulus"; that based on information provided to her by Plaintiff, Dr. Little did not "feel [Plaintiff] would be able to manage even a part time work day, since I am unaware of any jobs that have no distractions or confounding situations in a day's time"; that Plaintiff had the "worst case of anxiety and panic attack" Dr. Little had seen; and that Dr. Little asked Rick Orlando, L.P.C., L.C.S.W., to evaluate Plaintiff and to do a GAF assessment, as Dr. Little does "not generally grade the [GAF]." Tr. 218-19.

In an August 26, 2006 Mental Medical Source Statement, Dr. Little stated that, in her opinion, Plaintiff's limitations "lasted 12 continuous months, or can [] be expected to last 12 continuous months at the assessed severity" and that "as a family practitioner [she] rarely, if ever, do[es] global assessment of functioning." Tr. 233-34. Also, on October 29, 2007, Dr. Little reported that Plaintiff presented complaining of anxiety; that she was currently off of all medication; that Plaintiff said she had been doing well on Prozac with Ativan "for breakthrough anxiety and panic attacks"; that Plaintiff's diagnosis included anxiety, panic attack and agoraphobia with panic attacks; and that Plaintiff was prescribed medication. Tr. 211-13. Also, on October 29, 2007, Dr. Little reported that she believed it was in Plaintiff's "best interest not to further increase [Plaintiff's] anxiety

by a court appearance and to not increase the agoraphobia that ha[d] developed." Tr. 210. Dr. Little further reported that on November 29, 2007, Plaintiff called and left a message that she was having severe anxiety and wanted Dr. Little to call her; that when Dr. Little returned Plaintiff's call on that same date, there was no answer; and that when Dr. Little spoke with Plaintiff on November 30, 2007, Plaintiff said that she had a "major" panic attack the previous day, that she was scared, that it lasted two hours, and that she was better. Tr. 207.

The ALJ also considered the report of David Lipsitz, Ph.D., dated April 26, 2006. Plaintiff was referred to Dr. Lipsitz by her attorney for a psychological consultation. The court notes that Dr. Lipsitz reported that Plaintiff said that she had panic attacks since she was seventeen years old; that the attacks occurred two to three times a month; that she felt "anxious and nervous all day, every single day"; that she was not currently seeing a psychiatrist, psychologist, therapist, or counselor; and that "she did see a psychiatrist one time, but she could not make herself go back because she felt that seeing him made her feel worse." Dr. Lipsitz further reported, in regard to Plaintiff's mental status, that Plaintiff appeared to "be in much acute distress"; that she was very agitated, anxious, and tense; that she was oriented to time, place, and person; that there was no evidence of any active psychotic functioning, delusions, hallucinations, or paranoid ideations; that her affect was bright; that her mood was depressed, "but there [were] no suicidal ideations or impulses"; that her intellectual functioning was within the average range; that she showed no memory problems; that her concentration was good; that she could handle minor mathematical functions; that her insight and judgment were fair; that she had some difficulty making adequate generalizations based on past social experiences; that her "thought processes [were] primarily preoccupied with her insecurities, her fears, her anxieties and her inability to function within society." At Axis I, Dr. Lipsitz diagnosed Plaintiff with major depression, panic disorder, "rule out post traumatic stress disorder." At Axis IV, Dr.

Lipsitz reported that Plaintiff had "occupational problems, problems with social environment." At Axis V, Dr. Lipsitz diagnosed Plaintiff with a GAF of 50. Dr. Lipsitz's prognosis for Plaintiff was that she was "in need of ongoing psychiatric treatment combining medication with individual therapy. Hopefully medication could help alleviate the mood disturbance and the anxiety problems so that she could begin to assert herself and make a better adjustment to her environment." Tr. 242-45.

Consistent with the case law and Regulations, prior to determining Plaintiff's RFC, as discussed above and below, the ALJ considered Plaintiff's medical records, including the observations of treating and consulting doctors, and Plaintiff's description of her own limitations. See Tucker, 363 F.3d at 783; Anderson, 51 F.3d 779. The ALJ's consideration of the medical records is consistent with the requirements of Lauer, 245 F.3d at 704. Further, upon considering whether Plaintiff had a mental impairment, the ALJ engaged in an analysis consistent with 20 C.F.R. §§ 404.1520a and 416.920a. The ALJ's determination of Plaintiff's RFC reflects that she made findings in the functional areas described in those Regulations.

To the extent that the ALJ did not specifically mention every detail in Plaintiff's medical records, an ALJ's failure to cite specific evidence, does not indicate that such evidence was not considered. See Montgomery v. Chater, 69 F.3d 273,275 (8th Cir. 1995). See also Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citations omitted); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Indeed, the ALJ specifically addressed aspects of Plaintiff's medical records in first decision prior to remand by the Appeals Council. Consistent with the Regulations and case law, the

ALJ considered to what degree Plaintiff's medically determinable and credible impairments limit her ability to perform work-related activities. See SSR 96-8p. The court finds that the ALJ's determination of Plaintiff's RFC is based on substantial evidence from medical professionals as set forth in the record. See id.; Eichelberger, 390 F.3d at 591; Tucker, 363 F.3d at 783. As such, the court finds that the decision of the ALJ in regard to Plaintiff's RFC is supported by substantial evidence and that it is consistent with the case law and Regulations. See Krogmeier, 294 F.3d at 1022; Clark, 733 F.2d at 68.

**B.    Weight Given to Dr. Little's Opinion:**

Plaintiff contends that the ALJ did not give proper weight to the opinion of Dr. Little, who was her treating physician. Plaintiff further argues that the ALJ should not have given controlling weight to the opinion of Mr. Monolo.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and

upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8thCir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 9937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). A treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961; SSR 96-2p, (July 2, 1996). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding

that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record). "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlain, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence). On the other hand, a treating physician's observations should not necessarily be treated as conclusory where the doctor had "numerous examinations and hospital visits" with a claimant. See Turpin v. Bowen, 813 F.2d 165, 171 (8th Cir.1987).

Additionally, SSR 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996). Additionally, SSR 96-2p clarifies that 20 C.F.R. § § 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted). While a treating doctor's opinion is not controlling,"it may assist an ALJ [in] determining whether a claimant is disabled." Samons v. Astrue, 497 F.3d 813, (8th Cir. 2007) (citing Bergmann v. Apfel, 207 F.3d 1065, 1070-71 (8th Cir. 2000)).

An ALJ's failure to consider or discuss a treating physician's opinion that a claimant is disabled is error when the record contains no contradictory medical opinion. Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998). An ALJ, however, may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000). A treating physician's opinion is due "controlling weight" if that opinion is "'well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.' " Id. at 1012-13 (quoting 20 C.F.R. § 404.1527(d)(2) 2000). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

First, upon not giving controlling weight to Dr. Little's opinion that Plaintiff is unable to work, the ALJ considered the inconsistency in what Plaintiff told Dr. Little, Dr. Lipsitz, Dr. Mades, and Mr. Monolo. The ALJ considered that the information with which Plaintiff provided Dr. Little differed from information she gave to other doctors, examiners, the ALJ, and the Social Security office. In particular, the ALJ considered that Plaintiff wrote that she could not attend the hearing on October 15, 2007, because of a lack of medication but that she "told Dr. Little a different story on October 29, 2007." Tr. 19. The ALJ noted that while Dr. Little reported that Plaintiff was unable to make eye contact with her and that other doctors and Mr. Monolo observed no such problem. See Cunningham, 222 F.3d at 502. The ALJ also considered that although Plaintiff told Dr. Little that she had severe anxiety because of a lack of medication, she denied having palpitations, shortness of breath, or other problems she described in her paperwork. Tr. 19.

Second, upon discrediting the opinion of Dr. Little, the ALJ considered that during 2006 Plaintiff only saw Dr. Little three times, with a six month break in treatment. Indeed, while Dr. Little completed a Mental Medical Source Statement in which she reported that Plaintiff had marked and extreme limitations in several areas, including social functioning, concentration, persistence, and pace, Dr. Little completed this form after she had seen Plaintiff only three times. See 20 C.F.R. § 494.1527(d)(2)(1) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in

a checklist should not have been given controlling weight because prior to completing the form the doctor had met with the plaintiff only three times). Further, Dr. Little's checkmarks on this form are not conclusive as to Plaintiff's ability to work. See Stormo, 377 F.3d at 805-806.

Third, the ALJ considered that Dr. Little based her opinion that Plaintiff is unable to work on her assessment of Plaintiff while Plaintiff was non-compliant with medications. See Eichelberger, 390 F.3d at 589; Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment is inconsistent with complaints of disabling pain). See also Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008) (holding that the ALJ did not err in considering that the plaintiff's doctor did not account for the plaintiff's non-compliance). Fourth, the ALJ considered that Dr. Little acknowledged that she did not know how to use a GAF scale. The court notes that Dr. Little is a family doctor; she is not a psychologist or psychiatrist. Under such circumstances, although she allegedly was Plaintiff's treating doctor, the ALJ did not err in giving greater weight to the opinion of Dr. Mades, who is a specialist. "Although a treating physician's opinion is considered to be significant, specialists' opinions are generally afforded more weight." Qualls v. Apfel, 158 F.3d 425, 428 (8th Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(5)). See also 20 C.F.R. § 416.927(d)(5); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Dr. Mades opined that Plaintiff's prognosis is fair to good with appropriate intervention and observed that there was no evidence of thought disturbance during examination, although there was evidence of mild to moderate mood disturbance by history and presentation. Tr. 253. Significantly, Dr. Mades reported that Plaintiff had a GAF of 65, which represents only a mild impairment, and Dr. Mades evaluated Plaintiff while she was taking Fluoxetine and Xanax.

Additional factors are relevant to the ALJ's not giving controlling weight to Dr. Little's opinion. The ALJ also considered that Dr. Little, as a family doctor, did not refer Plaintiff to a psychologist or psychiatrist.[3] The ALJ also considered that Dr. Little did not conduct any testing of Plaintiff; rather, her opinion is based on Plaintiff's subjective complaints. While Dr. Little wrote a letter to the ALJ stating that Plaintiff cannot perform even part-time work, Dr. Little acknowledged that she is unfamiliar with the job market. As stated above, whether a person with a plaintiff's RFC is able to work is a decision that is reserved for the Commissioner. See Ellis, 392 F.3d at 994. Although Dr. Little wrote a letter stating that Plaintiff was unable to attend the hearing, the letter was comprised of Plaintiff's subjective complaints. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

To the extent that Plaintiff contends that the ALJ should not have credited the opinion of Mr. Monolo, the court notes that the ALJ did not give controlling weight to his opinion. Specifically, the ALJ held that Dr. Mades's report is the most reliable source. In any case, the issue is whether the decision of the ALJ is supported by the record as a whole. See Eichelberger, 390 F.3d at 589; Krogmeier, 294 F.3d at 1022; Nevland v. Apfel, 204 F.3d at 857.

Based on the foregoing, the court finds that the ALJ weighed the conflicting evidence to resolve disagreements among doctors who treated, examined, and evaluated Plaintiff. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). Further, the ALJ's finding that Plaintiff is capable of

---

[3] The court notes that while Dr. Little's December 19, 2006 letter to the ALJ stated that she was referring Plaintiff for an evaluation, the record does not reflect that such a referral was made. Tr. 219.

performing simple instructions with no contact with co-workers and only occasional contact with supervisors is consistent with Dr. Mades's findings.

**C.     Errors in the ALJ's Decision:**

Plaintiff contends that the ALJ erred in considering that Plaintiff could perform her past relevant work as a housekeeper in a motel or office environment because Plaintiff only worked as a hotel housekeeper for two months and because her income from that job does not meet substantial gainful employment levels.  Although Plaintiff alleges that she did not work as a housekeeper at the substantial gainful activity level to qualify such work as past relevant work, the ALJ did not stop her evaluation at Step 4 but rather determined at Step 5 that there are jobs, including that of a housekeeper, which Plaintiff can perform. See 20 C.F.R. § §416.920(g), 404.1520(g);Young, 221 F.3d at 1069 n.5.  Thus, to the extent that the ALJ arguably erred in considering Plaintiff's past work as a housekeeper, the court finds that such an error does not affect the ALJ's ultimate determination that there is work in the economy which Plaintiff can perform and that, therefore, she is not disabled. See  Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that an "arguable deficiency in opinion-writing technique" does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

Plaintiff contends that the ALJ erred in regard to the reason she did not attend the hearing and that she did not attend because of Dr. Little's order.  The ALJ did find that Plaintiff alleged she was unable to attend the hearing because of severe anxiety.  The court notes that Dr. Little's letter merely recites Plaintiff's subjective complaints. See Kirby, 500 F.3d at 709.  To the extent that Plaintiff contends that the ALJ erred in stating that Mr. Monolo's report was provided by Plaintiff's representative, the record reflects that at the hearing Plaintiff's representative stated that he would

provide a copy of Mr. Monolo's report. Tr. 307-308. Indeed, the errors alleged by Plaintiff were not determinative of the ALJ's decision. See Reynolds, 82 F.3d at 258; Carlson, 74 F.3d at 871; Robinson, 956 F.2d at 841. In any case, the issue is whether the ALJ's decision is supported by substantial evidence, and the court finds that it is. See Cox, 495 F.3d at 617; Guillams, 393 F.3d at 801; Davis, 239 F.3d at 966; McClees, 2 F.3d at 302; Murphy, 953 F.2d at 384.

## D. ALJ's Reliance on the Testimony of a Vocational Expert:

Plaintiff contends that the ALJ erred in relying on the testimony of the Vocational Expert ("VE") because the ALJ did not cite or discuss supporting evidence from the VE that there are jobs which Plaintiff can preform that actually exist in large numbers.

The ALJ found that Plaintiff has a severe mental impairment, which is a non-exertional impairment.[4] As such, the ALJ was required to obtain the testimony of a VE, which she did. See Asher v. Bowen, 837 F.2d 825, 827 n. 2 (8th Cir.1988).

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel,

---

[4] SSR 83-10, 1983 WL 31251, at *6, defines a non-exertional impairment as "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities." SSR 83-10, 1983 WL 31251, at *7, further defines non-exertional limitation as "[a]n impairment-caused limitation of function which directly affects capability to perform work activities other than the primary strength activities." SSR 83-10, 1983 WL 31251, at *7, defines nonexertional restriction as an "impairment-caused need to avoid one or more environmental conditions in a workplace."

175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobana, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Even though a vocational expert does not specifically recite factors in his answers, an ALJ can properly assume that the vocational expert "framed his answers based on the factors the ALJ told him to take into account." Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991). Where an ALJ's hypotheticals included all of a claimant's impairments as supported by the record, and the expert limited his opinion in this regard, an ALJ properly relies on the vocational expert's testimony. Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995).

The Eighth Circuit recently held as follows in Grissom v. Barnhart, 416 F.3d 834, 836 (8th Cir. 2005):

> "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir.2004) (citing Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir.1996)). The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole. Id. (citing Pickney v. Chater, 96 F.3d 294, 296 (8th Cir.1996)). However, the hypothetical question need only include those impairments which the ALJ accepts as true. Rappoport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir.1991).

Where a vocational expert, in response to a hypothetical which captures the concrete consequences of a claimant's deficiencies, responds that there are readily available jobs in which the claimant can engage, the Commissioner has met his burden to demonstrate the claimant's ability to

work in the economy. Cox v. Astrue, 495 F.3d 614, 621 (8th Cir. 2007) (citing Reed v. Sullivan, 988 F.2d 812, 815-16 (8th Cir. 1993)).

The court has found above that the ALJ's determination of Plaintiff's RFC is based on substantial evidence. This RFC permitted Plaintiff to perform the full range of work at all exertional levels with the non-exertional limitation that contact with co-workers be avoided and that she have only occasional contact with supervisors. Tr. 16. The ALJ posed a hypothetical to the VE which properly reflected Plaintiff's RFC; it included Plaintiff's credible limitations. Tr. 329-30. See Grissom, 416 F.3d at 836; Jones, 72 F.3d at 82. The VE concluded, based on the hypothetical which assumed a person with Plaintiff's RFC, that the hypothetical person could work as a housekeeper, a kitchen helper, or a cleaner. Specifically, the VE testified that a hypothetical person with Plaintiff's RFC "could work as a kitchen helper, as a dish-washer, without having too much exposure to coworkers." Tr. 331. The VE also considered that a "housekeeper usually works alone, and has minimal supervision except for right at the beginning when the person's being trained." Tr. 330. The VE further concluded that such jobs existed in sufficient numbers in the national and regional economy. To the extent that Plaintiff contends that the VE improperly relied on the Dictionary of Occupational Titles ("DOT") to reach this latter conclusion, Plaintiff's argument is without merit. The VE testified that she relied on the Bureau of Labor Statistics and the Missouri Job Service web site. Tr. 335.

The court finds that the ALJ properly relied on the testimony of the VE that there is work in the national and regional economy which a person with Plaintiff's RFC can perform. The court further finds that the ALJ's decision, in this regard, is supported by substantial evidence. See Robson, 526 F.3d at 392; Wingert, 894 F.2d at 298.

**D.      Plaintiff's Credibility:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, Plaintiff contends that the ALJ erred in considering that she stopped working because of pregnancy and not because of her disability. The records reflects that Plaintiff told Dr. Lipsitz that

she quit her most recent job after she became pregnant. Tr. 244. As such, the court finds that the decision of the ALJ in regard to the reason Plaintiff stopped working is supported by substantial evidence.

Second, Plaintiff contends that the ALJ erred in considering that she failed to take prescribed medication and for failing to follow 20 C.F.R. § 416.930, in this regard.[5] Plaintiff's medical records, as discussed above, reflect that she was not compliant in regard to taking medication prescribed by doctors. Plaintiff contends that she did not take medication because she could not afford it. Despite a claimant's argument that she was unable to afford prescription pain medication, an ALJ may discredit the claimant's allegations of a disabling condition where there is no evidence that the claimant sought treatment available to indigents. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999); Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994). Plaintiff did not present such evidence. Significantly, Dr. Lipsitz opined that Plaintiff's mood condition could be alleviated with medication. Tr. 244. Also, Dr. Mades, who examined Plaintiff while she was on medication, reported that her symptoms were mild. On October 29, 2007, Plaintiff reported to Dr. Little that she stopped taking medication two months prior but that, when she took Prozac with Ativan, she did well. Tr. 211. "[A] claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits." Tome v. Schweiker, 724 F.2d

---

[5]      20 C.F.R. § 416.930 provides:

(a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work, or, if you are a child, if the treatment can reduce your functional limitations so that they are no longer marked and severe.

(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled ... .

20 C.F.R. § 416.930(c) lists acceptable reasons for failing to follow prescribed treatment.

711, 713-714 (8th Cir. 1984) (citing 20 C.F.R. §§ 404.1518, 404.1530). The court finds, therefore, that the ALJ properly considered Plaintiff's failure to take prescribed medication; that her decision is consistent with 20 C.F.R. § 416.930; and that her decision, in this regard, is supported by substantial evidence.

Third, the ALJ considered that Plaintiff sought minimal treatment for her allegedly disabling condition. The ALJ specifically considered that, although Plaintiff contends that she became disabled in 2003, she did not seek treatment for her anxiety disorder until February 2006, when she saw Dr. Little. Seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). The court finds that the ALJ properly considered Plaintiff's failure to seek medical treatment and that her decision in this regard is supported by substantial evidence. Fifth, the ALJ considered that Plaintiff's ability to leave her house and spend time with friends was inconsistent with her allegations of panic attacks. The record reflects that Plaintiff said she goes out seven or eight times a week and that she goes shopping once or twice a month. Tr. 176. Plaintiff's husband reported that Plaintiff goes outside "a few times a week" and that Plaintiff "sometimes go[es] to other people['s] houses" and that she "talks on the phone fairly often." Tr. 168-69. Activities which are inconsistent with a claimant's assertion of disability reflect negatively upon the claimant's allegation of disability. See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). The court finds that the ALJ properly considered Plaintiff's leaving her house and spending time with friends and that the ALJ's decision in this regard is supported by substantial evidence.

Sixth, the ALJ considered that Plaintiff cares for her child and drives to go shopping. The ALJ also considered that Plaintiff told Mr. Monolo that she had obtained her driver's license in 2004. Tr. 18. The ALJ found, therefore, that Plaintiff "was able to go to the local office, take and pas the

written test, and take and pass a driving test." Tr. 18-19. The court notes that Plaintiff's husband reported that "she does regular household chores." Tr. 167. A plaintiff's daily activities can be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir.2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities and that the ALJ's decision in this regard is supported by substantial evidence.

## IV.
## CONCLUSION

The Court finds that the Commissioner's decision is supported by substantial evidence contained in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint are **DENIED**; Doc. 1, Doc. 14.

**IT IS FINALLY ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum and Order.

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this <u>22nd</u> day of July, 2009.          UNITED STATES MAGISTRATE JUDGE